# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

LEE HUNT, as Personal Representative of the
Wrongful Death Estate of HEATH DALE
BENNETT, deceased,

      Plaintiff,

vs.                                                                          No. CIV 18-0863 JB\KK

JACK V. WATERS, D.C., P.C., a New Mexico
for-profit professional corporation; JACK V.
WATERS, an individual; THE NATIONAL
CHIROPRACTIC COUNCIL, a California for-
profit corporation, and ALLIED
PROFESSIONALS INSURANCE CO., A
RISK RETENTION GROUP, INC., an Arizona
for profit corporation,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Motion to Remand for Lack

of Subject Matter Jurisdiction and for Fees Incurred as a Result of Improper Removal, filed

October 1, 2018 (Doc. 11)("Motion to Remand"); (ii) the Defendants' Motion to Compel

Arbitration and Stay Proceedings, filed November 2, 2018 (Doc. 28)("Motion to Compel");

(iii) the Defendants the National Chiropractic Council and Allied Professionals Insurance Co., a

Risk Retention Group, Inc's, Motion to Dismiss for Failure to State a Claim at 4, filed September

28, 2018 (Doc. 9)("MTD"); and (iv) the Plaintiff's Motion to Stay Federal Proceedings Pending

Determination of Motion to Remand (Doc. 12)("Motion to Stay"). The Court held a hearing on

January 29, 2019. <u>See</u> Clerk's Minutes at 1, filed January 29, 2019 (Doc. 33). The primary issues

are: (i) whether the Court should ignore the citizenships of Defendants Jack V. Waters, D.C., P.C.

and Dr. Jack V. Waters(collectively, the "Waters Defendants") for the purpose of determining diversity pursuant to 28 U.S.C. § 1332, because the Waters Defendants entered an arbitration agreement with Heath Dale Bennett, the deceased; (ii) whether maintaining jurisdiction of Defendants The National Chiropractic Council and Allied Professional Insurance Company, a Risk Retention Group, Inc. (collectively, the "Insurance Defendants") violates 28 U.S.C. § 1441(b)(2) -- forum-defendant rule -- if the Court otherwise concludes that it has subject-matter jurisdiction; (iii) whether the Court should require that the Insurance Defendants pay Plaintiff Lee Hunt, the personal representative for Bennett's estate, the fees and costs for litigating these first two issues; (iv) whether the Court should compel arbitration between Hunt and the Waters Defendants; (iv) whether Hunt adequately pleads a claim against the Insurance Defendants for their requirement that the Waters Defendants enter arbitration agreements with patients; and (v) whether the Court should stay proceedings in the case pending a decision on the Motion to Remand. The Court concludes that: (i) it will not ignore the Waters Defendants' citizenships, because it cannot decide properly the Motion to Compel, before determining whether it has subject-matter jurisdiction; (ii) the Court would not apply the forum-defendant rule if the Court concluded that it otherwise had subject-matter jurisdiction, because, in that scenario, the Court would have deemed the Waters Defendants not to be "parties in interest," 28 U.S.C. § 1441; and (iii) the Court will not grant Hunt's request for fees and costs. As Hunt and the Waters Defendants are New Mexico citizens, see Complaint for Chiropractic Malpractice, Breach of Fiduciary Duty, Unfair Trade Practices, Aiding and Abetting Breach of Fiduciary Duty, Civil Conspiracy and Wrongful Death ¶ 1, at 1, filed in state court July 31, 2018, filed in federal court September 13, 2018 (Doc. 1-1)("Complaint"); id. ¶¶ 6-8, at 2, the Court lacks subject-matter jurisdiction over this matter and

remands the case to the County of Santa Fe, First Judicial District, State of New Mexico. The Court grants the Motion to Stay in part and denies it in part, because, at the hearing, the Court began arguments with the MTD, see Draft Transcript of Hearing at 3:5-15 (taken January 29, 2019)(Court, Biehler)("Tr."),[1] but the parties otherwise agree to the Motion to Stay, see Tr. at 38:20-39:8 (Court, McGinn, Biehler, Freedman). The Court lacks subject-matter jurisdiction to decide the remaining issues.

## FACTUAL BACKGROUND

The Court takes its facts from the Complaint. The Court provides these facts for background. It does not adopt them as the truth, and it recognizes that these facts are largely Hunt's version of events.

This case arises from Bennett's February 7, 2017, visit to Dr. Waters' chiropractic clinic, Jack V. Waters, D.C., P.C. See Complaint ¶ 3, at 2; id. ¶¶ 7-8, at 2; id. ¶ 56, at 8. Dr. Waters resides in Clovis, New Mexico, and, at all times relevant to this case, held a license "as a doctor of chiropractic" in the State of New Mexico. Complaint ¶ 6, at 2. Dr. Waters operates Jack V. Waters, D.C., P.C. in Clovis, and Jack V. Waters, D.C., P.C.'s principal place of business is Clovis. See Complaint ¶¶ 6-8, at 2.

The Waters Defendants held an insurance policy with the Insurance Defendants. See Complaint ¶ 26, at 4. National Chiropractic purchases "group malpractice insurance for chiropractors," and its principle place of business is in Orange, California. Complaint ¶¶ 9, 11, at 2. Allied Professional is an Arizona corporation that "operate[s] a joint venture" with National

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Chiropractic "for the purpose of getting chiropractors to purchase APIC-NCC group malpractice insurance policies." Complaint ¶ 6, at 3. See id. ¶ 23, at 4. The Insurance Defendants require policyholders to enter "pre-dispute arbitration agreements with patients and have patients sign blanket informed consent forms." Complaint ¶ 24, at 4.

Bennett saw Dr. Waters intermittently for eight years. See Complaint ¶ 52, at 8. On his first visit to Dr. Waters on December 29, 2008, Bennett signed "[a]n Informed Consent to Treat Form," which "contained a short paragraph on arbitration." Complaint ¶ 28, at 5. The paragraph in the Arbitration Agreement, filed November 2, 2018 (Doc. 28), states:

> It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by state and federal law, and not by a lawsuit or resort to court process except as state and federal law provides for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration.

Arbitration Agreement at 1. The arbitration agreement and informed consent form omit material relevant to disputes over chiropractic care and the risks that chiropractic care poses, such as "the risk of vertebral arterial dissection . . . or ischemic stroke." Complaint ¶ 31, at 5. See id. ¶¶ 30-31, at 5. On February 7, 2017, Bennett suffered "an acute left vertebral artery injury during chiropractic manipulation" from Dr. Waters. Complaint ¶ 92, at 15. The injury led "to a fatal stroke" at Jack V. Waters, D.C., P.C. Complaint ¶ 93, at 15.

## PROCEDURAL BACKGROUND

Hunt alleges that: (i) Dr. Waters committed chiropractic negligence, see Complaint ¶¶ 94-104, at 12-14; (ii) Dr. Waters breached his fiduciary duty to Bennett, see Complaint ¶¶ 105-12, at

14-16; (iii) Jack V. Waters, D.C., P.C. violated the Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 to -26, <u>see</u> Complaint ¶¶ 113-22, at 16-18; and (iv) the Insurance Defendants aided and abetted the breach of fiduciary duty and conspired with Dr. Waters to commit the breach of fiduciary duty, <u>see</u> Complaint ¶¶ 123-35, at 18-20.  The Waters Defendants want their arbitration agreement with Bennett enforced.  <u>See</u> <u>generally</u> Motion to Compel.  On September 13, 2018, the Insurance Defendants removed the case to federal court on the basis of 28 U.S.C. § 1332.  <u>See</u> Notice of Removal at 3, filed September 13, 2018 (Doc. 1).  In removing the case, the Insurance Defendants ignore the Waters Defendants' citizenships, "because [the Waters Defendants] are subject to mandatory arbitration."  Notice of Removal at 2.  The Insurance Defendants also filed an Amended Answer to Complaint, filed September 28, 2018 (Doc. 8)("Amended Answer"), in which they seek to compel Hunt to arbitrate with them pursuant to the Arbitration Agreement.  <u>See</u> Amended Answer ¶ 24, at 3.

      **1.**       **<u>The Motion to Remand.</u>**

In the Motion to Remand, Hunt asks that the Court remand the case, because the Waters Defendants, like him, are New Mexico citizens, and no law supports disregarding the Waters Defendants' citizenship based on the Arbitration Agreement.  <u>See</u> Motion to Remand at 1.  Hunt describes that the Insurance Defendants had "no good ground to remove this case," and accordingly asks that the Court award him "reasonable attorney's fees and costs incurred as a result of the removal."  Motion to Remand at 1.  Hunt explains that no court has found that he must arbitrate with the Waters Defendants and that the parties have not argued the Waters Defendants' Motion to Compel.  <u>See</u> Motion to Remand at 7.  Hunt contends that, until a court dismisses the Waters Defendants, complete diversity does not exist.  <u>See</u> Motion to Remand at 7-8.  Hunt

anticipates that the Insurance Defendants might argue that the Waters Defendants were fraudulently joined, and contends that, "to establish that a party was fraudulently joined, a defendant has the burden of demonstrating that 'there is no possibility that the plaintiff would be able to establish a cause of action' against the party alleged to be fraudulently joined." Motion to Remand at 8-9 (quoting Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d 1208, 1216 (D.N.M. 2011)(Browning, J.)). Hunt avers that "[t]here is a legitimate question about whether the Waters Defendants are even parties to the purported Arbitration Agreement," and argues that he will "demonstrate that the Arbitration Agreement was obtained by misrepresentation, breach of fiduciary duty, and is unenforceable because it is procedurally and substantively unconscionable," and that "[c]ourts in New Mexico have invalidated and refused to enforce such arbitration agreements as a matter of state contract law." Motion to Remand at 10-11.

According to Hunt, the Insurance Defendants should have known that they had no "legal basis for the Court to disregard" their citizenship and that "there is incomplete diversity of citizenship among the parties." Motion to Remand at 11. Hunt, therefore, asks that the Court award him the fees for litigating the removal issue, because the Insurance Defendants' "decision to remove this action was so unreasonable that it suggests a motive to delay and multiply the proceedings." Motion to Remand at 12. See id. at 11-12. Hunt characterizes the removal as providing the Insurance Defendants "an indefinite extension for itself and all other Defendants on discovery." Motion to Remand at 12. Hunt also suggests that, in the Notice of Removal, the Insurance Defendants made misstatements of fact that "are demonstrably untrue and/or misleading." Motion to Remand at 12. According to Hunt, such misstatements of fact include

that Hunt contends that the Defendants violated federal law and that Hunt is subject to mandatory arbitration.  See Motion to Remand at 12.

### 2. **The Motion to Remand Response.**

The Insurance Defendants respond.  See Response to Motion to Remand for Lack of Subject Matter Jurisdiction and for Fees Incurred as a Result of Improper Removal, filed October 12, 2018 (Doc. 16)("Motion to Remand Response").  The Insurance Defendants contend that "[p]arties who do not have a real interest in the litigation have historically not been considered by the court when evaluating diversity."  Motion to Remand Response at 2.  According to the Insurance Defendants, "'[e]arly in its history, [the Supreme Court of the United States of America] established that the citizens upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy.'"  Motion to Remand Response at 2 (quoting Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460-61 (1980)).  The Insurance Defendants characterize the Waters Defendants as nominal parties.  See Motion to Remand Response at 2.  The Insurance Defendants argue that Hunt will not convince a court "to invalidate" the arbitration agreement.  Motion to Remand Response at 3.  According to the Insurance Defendants, that a court will uphold the Arbitration Agreement means that the Court should "adhere to the contract" and should not remand the case.  Motion to Remand Response at 3.  The Insurance Defendants clarify that they do not argue fraudulent joinder.  See Motion to Remand Response at 4.  The Insurance Defendants also disagree that the Court should award Hunt attorney's fees and costs, because, according to the Insurance Defendants, they have not acted with "malicious intent"; they do not seek to avoid discovery; and the Arbitration Agreement binds the Waters Defendants and Hunt.  Motion to Remand Response at 4.

### 3.    __The Motion to Remand Reply__.

Hunt summarizes that the Insurance Defendants concede three facts: (i) that the case is not based on a federal question; (ii) that no diversity exists between Hunt and the Waters Defendants; and (iii) that Hunt did not fraudulently join the Waters Defendants. See Plaintiffs' Reply in Support of their Motion to Remand at 1-2, filed October 24, 2018 (Doc. 24)("Motion to Remand Reply"). Hunt then attacks the Insurance Defendants' nominal-party theory. See Motion to Remand Reply at 2-5. He argues: "Defendants either ignore or misunderstand the meaning of the term 'nominal party.' A nominal party, as *Navarro* used that term, is one who has 'no real interest in the controversy.'" Motion to Remand Reply at 2 (quoting Navarro Sav. Ass'n v. Lee, 446 U.S. at 460-61; and citing City of Carlsbad v. I&W, Inc., No. CIV 12-0080 BB/CG, 2012 WL 12931286, at *6 (D.N.M. May 15, 2012)(Black, J.)). According to Hunt, a party is nominal when "no relief is sought" against that party. Motion to Remand Reply at 2 (emphasis omitted)(quoting City of Carlsbad v. I&W, Inc., 2012 WL 12931286, at *6; and citing Brazell v. Waite, 525 F. App'x 878, 883 (10th Cir. 2013)(unpublished); Becker v. Angle, 165 F.2d 140, 142 (10th Cir. 1947); Moya v. 3316 22nd Ave. Se., CIV 18-0104 JB/JHR, 2018 WL 2447801, at *1 n.2 (D.N.M. May 31, 2018)(Ritter, M.J.); Am. Lung Ass'n v. Am. Lung Ass'n, Civil No. 02-108-B, 2002 U.S. Dist. LEXIS 13593 (D.N.H. July 25, 2002)(Barbadoro, J.)). Hunt reiterates that a court may not even enforce the Arbitration Agreement. See Motion to Remand Reply at 4. Further, Hunt avers that the Waters Defendants "are significant wrongdoers in this case," Motion to Remand Reply at 4, and that they have an interest in avoiding liability, see Motion to Remand Reply at 4. Hunt notes that, moreover, in their Amended Answer, the Insurance Defendants argue that Hunt's claims against them are subject to arbitration. See Motion to Remand Reply at 5. According to Hunt,

under the Insurance Defendants' nominal-parties theory, this allegation would mean that all the Defendants are nominal parties.  See Motion to Remand Reply at 5.

Hunt also contends that the Insurance Defendants "essentially" are arguing fraudulent joinder, because, according to Hunt, they speculate that a court "would grant the Waters Defendants' opposed motion to compel arbitration."  Motion to Remand Reply at 6.  Hunt contends that the Insurance Defendants "purposely avoid alleging fraudulent joinder because they cannot meet their burden to prove fraudulent joinder by establishing that Plaintiffs have no possibility of recovery against the party whose joinder is questioned."  Motion to Remand Reply at 6.  Hunt suggests that the Insurance Defendants attempt to shift to him the burden to disprove fraudulent joinder, and he encourages the Court not to engage in this analysis.  See Motion to Remand Reply at 6-7.

Hunt then contends that the Court should determine its jurisdiction before it decides the Motion to Compel.  See Motion to Remand Reply at 7.  Hunt cites Zavanna, LLC v. RoDa Drilling Co., Case No. 4:09-cv-0222009, U.S. Dist. LEXIS 102726, at *33 (D.N.D. Sept. 14, 2009)(Miller, J.), and Brotherhood of Maintenance of Way Employees Division of International Brotherhood of Teamsters v. Union Pacific Railroad 475 F. Supp. 2d 819, 831 (N.D. Iowa 2007)(Bennett, J.), for the proposition that a court must decide challenges to subject-matter jurisdiction before deciding other issues.  See Motion to Remand Reply at 7.  Hunt contends that, if the Court does not have subject-matter jurisdiction over the case, the Court cannot decide the Motion to Compel.  See Motion to Remand Reply at 8.

Hunt ends by repeating his request for the fees and costs for combating the removal.  See Motion to Remand Reply at 8.  Hunt contends that "[a]ttorney fees are appropriate where the

removing party lacked an objectively reasonable basis for seeking removal." Motion to Remand Reply at 8 (citing Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005)). Hunt argues that the Insurance Defendants need not have intended "to disrupt the state proceedings and delay discovery," Motion to Remand Reply at 8, because their justification for removal "is utterly devoid of legal support," Motion to Remand Reply at 9. Hunt indicates that the Insurance Defendants cannot provide a single case to support their arguments. See Motion to Remand Reply at 8. According to Hunt, that the Waters Defendants do not join the Motion to Remand Response indicates that the Insurance Defendants do not have "good ground to remove this case." Motion to Remand Reply at 1. Hunt concludes: "[W]here a plaintiff has a colorable argument supporting a claim for relief against a non-diverse defendant, remand is appropriate and the court should award costs and fees for improper removal." Motion to Remand Reply at 10 (citing Ambrose v. Grindell & Romero Ins., No. CIV 17-0681 MV/SMV, 2018 U.S. Dist. LEXIS 29160, at *14 (D.N.M. Feb. 23, 2018)(Vidmar, M.J.); Bernier v. Allstate Ins., No. CIV 08-0366 MV/KBM, 2009 WL 10666369, at *2 (D.N.M. March 30, 2009)(Vázquez, J.); Tran v. Waste Mgmt., 290 F. Supp. 2d 1286 (M.D. Fla. 2003)(Conway, J.)).

### 4.     **The Motion to Compel.**

The Waters Defendants seek to compel arbitration. See Motion to Compel at 1. They argue that, pursuant to the Arbitration Agreement that Bennett and the Waters Defendants signed, any suit arising from Bennett's medical care is subject to arbitration. See Motion to Compel at 3-4. The Waters Defendants, accordingly, ask that the Court stay all decisions in this matter until it decides the Motion to Compel. See Motion to Compel at 5. The Waters Defendants note that the Federal Arbitration Act, 9 U.S.C. §§ 1-14 ("FAA"), applies and that Hunt cannot show the

Arbitration Agreement is procedurally or substantively unconscionable.  <u>See</u> Motion to Compel at 8-9.

### 5.    <u>The Motion to Compel Response</u>.

Hunt asks the Court to deny the Motion to Compel.  <u>See</u> Plaintiffs' Response in Opposition to the Waters Defendants' Motion to Compel Arbitration and Stay Proceedings, Filed in New Mexico State District Court Before Removal, filed October 5, 2018 (Doc. 14)("Motion to Compel Response").  Hunt notes that New Mexico law governs the Arbitration Agreement.  <u>See</u> Motion to Compel Response at 8-9.  He argues that a court should determine whether the Arbitration Agreement compels arbitration here.  <u>See</u> Motion to Compel Response at 10.  He contends that the Arbitration Agreement should not apply, because it does not identify the parties to the agreement; the Waters Defendants did not disclose the burden that arbitration would impose on Bennett or that they received better insurance when they obtained arbitration agreements; the Arbitration Agreement is procedurally unconscionable as the terms disfavor the weaker party; the Arbitration Agreement is substantively unconscionable, because even the arbitration forum disfavors arbitration between healthcare providers and patients, and because the Arbitration Agreement permits the Waters Defendants to sue in court; the Arbitration Agreement lacks consideration; and no mutual assent continued over the eight years that Bennett worked with the Waters Defendants. <u>See</u> Motion to Compel Response at 11-22.  Hunt notes that the Court should remand the case or, in the alternative, permit him to conduct discovery relevant to the Arbitration Agreement's validity.  <u>See</u> Motion to Compel Response at 22-24.

6. **The Motion to Compel Reply.**

The Waters Defendants contend that the Arbitration Agreement is valid, that Bennett and the Waters Defendants agreed to arbitration, and that they signed the Arbitration Agreement. See Reply in Support of Defendants' Motion to Compel Arbitration and Stay Proceedings at 3-4, filed November 1, 2018 (Doc. 26)("Motion to Compel Reply"). The Waters Defendants indicate that they made no material misrepresentations to Bennett; that they had no duty to Bennett, as he signed the Arbitration Agreement when he was a prospective patient; and that the Arbitration Agreement is not substantively unconscionable, because it binds both parties to arbitration. See Motion to Compel Reply at 5-10. The Waters Defendants contend that no discovery will help Hunt argue against the Motion to Compel. See Motion to Compel Reply at 10-11.

7. **The MTD.**

On September 28, 2018, the Insurance Defendants filed the Defendants the National Chiropractic Council and Allied Professionals Insurance Co., a Risk Retention Group, Inc's, Motion to Dismiss for Failure to State a Claim at 4, filed September 28, 2018 (Doc. 9)("MTD"). The Insurance Defendants argue that they did nothing illegal by requiring chiropractors to use arbitration agreements and that Hunt does not allege an agreement to commit an unlawful act. See MTD ¶ 3-4, at 2. The Insurance Defendants ask that the Court dismiss with prejudice the claims against them. See MTD at 3.

8. **The MTD Response.**

Hunt filed the Plaintiff's Response in Opposition to Defendants National Chiropractic Council and Allied Professionals Insurance Co.'s Motion to Dismiss Count IV for Failure to State a Claim, filed October 12, 2018 (Doc. 18)("MTD Response"). Hunt contends that he does not

need to allege that the Insurance Defendants conspired to commit an illegal act and argues that he adequately states a civil conspiracy claim alleging the Insurance Defendants required that the Waters Defendants have arbitration agreements with patients. See MTD Response at 7-8. Hunt argues that the Insurance Defendants conspired with the Waters Defendants to breach a fiduciary duty to Bennett by failing to disclose information about arbitration and about chiropractic care's risk of death, by hiding the Arbitration Agreement among other forms, by having new and returning patients complete the same forms, and by allowing the Arbitration Agreement to continue over eight years of treatment. See MTD Response at 15.

9.      **The Motion to Stay.**

On October 1, 2018, Hunt filed the Motion to Stay Federal Proceedings Pending Determination of Motion to Remand (Doc. 12)("Motion to Stay"). Hunt indicates that he served discovery on all the Defendants and that proceeding with the case in the Court will waste party and court resources. See Motion to Stay at 4. Hunt argues that the Court must have subject-matter jurisdiction before proceeding to other issues and so it must first decide the Motion to Remand. See Motion at Stay at 4-5.

10.      **The Motion to Stay Response.**

The Insurance Defendants filed a response to the Motion to Stay. Response to Motion to Stay Federal Proceedings Pending Determination of Motion to Remand, filed October 12, 2018 (Doc. 17)("Motion to Stay Response"). The Insurance Defendants do not object to the Motion to Stay. See Motion to Stay Response at 1. The Insurance Defendants ask that, at the hearing, the Court hear the Motion to Compel, the Motion to Remand, and the MTD in that order. See Motion to Stay Response at 1.

12.     **The Motion to Stay Reply.**

Hunt objects to the order that the Insurance Defendants request for the hearing. See Plaintiff's Reply in Support of His Motion to Stay Federal Proceedings Pending Determination of Motion to Remand at 3, filed October 25, 2018 (Doc. 22)("Motion to Stay Reply"). Hunt argues that the Court must decide its subject-matter jurisdiction before deciding other issues. See Motion to Stay Reply at 1-3. Hunt argues that the Court should not hear arguments on the Motion to Compel before the Motion to Remand and should grant his request in the Motion to Stay. See Motion to Stay Reply at 3.

12.     **The Hearing.**

The Court began by indicating its intention to start the hearing with MTD arguments, and the Insurance Defendants began the arguments. See Tr. at 3:5-15 (Court, Biehler). According to the Insurance Defendants, Hunt alleges that they entered a conspiracy to have, or aided and abetted having, their clients sign arbitration agreements with patients. See Tr. at 5:6-13 (Biehler). The Insurance Defendants argued that entering an arbitration agreement and encouraging their clients to enter arbitration agreement are not unlawful actions. See Tr. at 3:15-4:25 (Biehler).

Hunt explained that he sued the Insurance Defendants anticipating that the Waters Defendants would contend that the Insurance Defendants provided the Arbitration Agreement that Bennett signed. See Tr. at 8:9-16 (McGinn). Hunt argued that the Waters Defendants did not alone decide to present the Arbitration Agreement and that civil conspiracy offers a cause of action against the Insurance Defendants. See Tr. at 9:2-10 (McGinn). The Court asked whether a fiduciary relationship exists before a potential patient becomes a patient. See Tr. at 9:11-12 (Court). Hunt contended that a fiduciary duty exists and cited King v. Bryant, 795 S.E.2d 340

(N.C. 2017). <u>See</u> Tr. at 9:14-10:19 (McGinn). Hunt clarified that he brings an aiding-and-abetting claim and a civil conspiracy claim. <u>See</u> Tr. at 11:2-3 (Court, McGinn). Hunt explained that the Insurance Defendants drafted the informed consent and arbitration forms, and required that chiropractors have patients sign them before treating patients, without explaining the forms and without disclosing the risk of death. <u>See</u> Tr. at 11:6-12:21 (McGinn).

The Court asked the Insurance Defendants whether Hunt had a case on point for his arguments, and the Insurance Defendants replied that he did not have one. <u>See</u> Tr. at 14:2-12 (Court, Biehler). The Insurance Defendants argued that providing the forms did not constitute a breach by anyone. <u>See</u> Tr. at 14:18-15:4 (Biehler). The Court asked the Insurance Defendants whether <u>King v. Bryant</u> made the Insurance Defendants' conduct a breach of fiduciary duty, and the Insurance Defendants opined that it did not have this effect. <u>See</u> Tr. at 15:14-16:1 (Court, Biehler). The Insurance Defendants emphasized that Bennett did not have a fiduciary relationship with the Waters Defendants when he signed the Arbitration Agreement and that Hunt did not allege that the Insurance Defendants told the Waters Defendants what information to provide potential patients. <u>See</u> Tr. at 16:15-17:3 (Biehler). The Court asked when the fiduciary relationship begins, and the Insurance Defendants indicated that the relationship begins when the patient accepts treatment. <u>See</u> Tr. at 17:4-15 (Court, Biehler). The Waters Defendants intervened to note that, in <u>THI of New Mexico at Hobbs Center LLC v. Spradlin</u>, 532 F. App'x 813, 819 (10th Cir. 2013)(unpublished), the United States Court of Appeals for the Tenth Circuit stated that a business relationship exists between a nursing home and a prospective patient. <u>See</u> Tr. at 17:25-18:13 (Freedman). The Waters Defendants noted that nursing homes provide medical services once someone enters the nursing home. <u>See</u> Tr. at 18:20-19:4 (Freedman).

The Court began the discussion regarding the Motion to Remand by asking Hunt to whom the phrase "nominal parties" in the Motion to Remand refers. See Tr. at 20:21-24 (Court). Hunt explained that, according to the Insurance Defendants, the Waters Defendants are nominal parties, because they "seek . . . to compel arbitration." Tr. at 21:4-7 (McGinn). The Court responded: "But I guess I'm having a hard time -- who, then, are the real parties, are the important parties, if it's not the doctor and his PC?" Tr. at 21:8-10 (Court). Hunt agreed with the Court's concerns and continued: "What [the Insurance Defendants] say is: Look, the Waters [D]efendants are nominal parties because they are entitled to this arbitration, and we think the Court is going to enforce it at some point." Tr. at 21:13-16 (McGinn). In response, the Court inquired whom the arbitration agreement allegedly binds. See Tr. at 21:20-22 (Court). Hunt responded that Bennett and the Waters Defendants signed the arbitration agreement, but, according to Hunt, the Insurance Defendants filed an "amended answer asserting that the arbitration agreement applies to them as well as third party beneficiaries." Tr. at 21:25-22:2 (McGinn). Hunt then repeated his contention from the Motion to Remand Reply that, under the Insurance Defendants' nominal-party theory, this allegation would imply that the Insurance Defendants are also nominal parties. See Tr. at 22:8-10 (Montoya). The Court asked who filed the Amended Answer. See Tr. at 22:4 (Court). Hunt explained that the Insurance Defendants filed the document. See Tr. at 22:5-8 (McGinn). The Court then turned to the parties' citizenships: "But just to make sure I understand: Hunt is from New Mexico, Bennett was from New Mexico, Waters is [a New Mexico citizen], and his PC [is] a New Mexico Corporation, correct?" Tr. at 22:11-14 (Court). Hunt confirmed that summary is correct. See Tr. at 22:15 (McGinn). The Court proposed: "So that is enough to destroy complete diversity?" Tr. at 16-17 (Court). Hunt agreed with the Court's suggestion. See Tr. at 22:18

(McGinn). The Court followed this statement by expressing its assumption that the Insurance Defendants are not New Mexico citizens. See Tr. at 22:19-21 (Court). Hunt again confirmed the Court's supposition. See Tr. at 22:22-23 (McGinn).

As Hunt turned to his argument, the Court asked him to further explain nominal parties. See Tr. at 23:5-7 (Court). Hunt began by describing that, in Navarro Savings Association v. Lee, which the Insurance Defendants cite, "the named parties, were an association of collective trustees who had the power to manage, to hold, to disperse assets for shareholders." Tr. at 23:10-13 (McGinn). According to Hunt, the parties in Navarro Savings Association v. Lee did not dispute that "the named parties were completely diverse." Tr. at 14-15 (McGinn). Hunt described that the parties instead debated whether, in determining diversity, the Supreme Court should consider the shareholders, whom the plaintiff had not named. See Tr. at 23:15-24 (McGinn, Court). According to Hunt, the Supreme Court decided that "the shareholders are the nominal parties, the real parties in interest are the parties who had the power to control, to manage, to dispose of the property at interest." Tr. at 23:18-21 (McGinn). Hunt then summarized several descriptions of nominal parties: "a nominal party is one who has, quote, [']no real interest in the controversy.['] Another description is [']no relief is sought against them where it's a party a John Doe, a Jane Doe or somebody named but there is not that complaint against them.[']" Tr. at 24:11-21 (McGinn). The Court concurred that courts ignore Jane and John Does, but, according to the Court, "[t]hat's just kind of a fictitious party so I'm trying to -- maybe the trust relationship is what they're talking about." Tr. at 24:24-25:1 (Court). Hunt provided additional descriptions of nominal parties:

> Another description is ["]no [relief] is sought against them,["] or ["]they have no personal stake in the outcome.["] Another one from [Moya v. 3316 22nd Avenue Southeast], "the plaintiff seeks no particular relief against it." Another description

- 17 -

from the American Lung Association . . . we cite in our brief -- "a nominal party is
one who has nothing to lose or gain by the controversy."

Tr. at 25:2-9 (McGinn). Hunt then cited Aguayo v. AMCO Insurance, 59 F. Supp. 3d 1225

(D.N.M. 2014)(Browning, J.), but the Court interjected that the case discusses fraudulent joinder,

and asked: "Is that what [the Insurance Defendants are] talking about with nominal parties, . . . it's

a fraudulently joined party?" Tr. at 25:14-16 (Court). Hunt stated that no, "they are not" arguing

fraudulent joinder and are "expressly not" making that argument Tr. at 25:17-18 (McGinn). Hunt

opined that the Insurance Defendants worry about "the heavy burden that is . . . placed on a party

asserting fraudulent joinder." Tr. at 25:18-19 (McGinn).

The Court asked why the arbitration agreement would change the Waters Defendants'

interests. See Tr. at 25:25-26:2 (Court). Hunt offered that the arbitration agreement should not

change their interests. See Tr. at 26:3-4 (McGinn). The Court continued: "It's like a forum

selection clause. It just tells us where we're litigating the issue." Tr. at 26:5-8 (Court). Hunt

agreed with the Court's analysis. See Tr. at 26:9-10 (McGinn). He averred that the Insurance

Defendants have no basis for removal and indicated that parties are "also prohibited from removing

a case when the defendant lives in the state in which the case is brought." Tr. at 27:5-7 (McGinn).

See id. at 26:24-27:2 (McGinn). Hunt again requested fees and costs, and argued:

> The process of removing this case was disruptive, delayed proceedings, wasted this
> Court's time, wasted the parties' time, imposed additional costs on both parties and
> under those circumstances the assessment of costs and fees is appropriate [under]
> the case of Martin v. Franklin Capital Corporation that we cited in our brief.
> [A]ssessing costs and fees on remand reduces the attractiveness of removal as a
> method for delaying litigation and imposing costs on plaintiff and again it is not a
> situation where they have to have acted in bad faith but just where there is no
> objectively reasonable basis for which the removal occurred and that is this case.

Tr. at 27:19-28:7 (McGinn).

The Court turned to the Insurance Defendants. See Tr. at 28:13-15 (Court). They began: "Let me be the first to say that this is a novel issue of law before this Court. I have not been able to find any case, any case law which addresses the specific issue which we raise with this Court." Tr. at 28:16-20 (Biehler). The Court sought to clarify whether the Insurance Defendants concede that Hunt states a claim against the Water Defendants. See Tr. at 28:24-25 (Court); id. at 29:2 (Court). The Insurance Defendants made this concession and stated that they do not argue fraudulent joinder. See Tr. at 29:3-8 (Biehler). The Insurance Defendants contended that they take the position "that the New Mexico defendants, Dr. Waters and his PC are nominal parties in this case because they are subject to a mandatory arbitration agreement." Tr. at 29:10-13 (Biehler). The Insurance Defendants clarified their position: "[T]he test should be [--] is this a claim which is being made to this or can be made to this Court for relief from this [C]ourt." Tr. at 30:1-4 (Biehler). The Insurance Defendants averred that, because the Waters Defendants will not litigate in federal court, the Court should consider them nominal parties. See Tr. at 30:10-16 (Biehler). The Insurance Defendants quoted Hartford Fire Insurance v. Harleysville Mutual Insurance, 736 F.3d 255 (4th Cir. 2013):

> "[T]he other Circuit[s] over massage what ought to be a straightforward examination of the meaning of the word nominal and the reasons for having the nominal party exception. Nominal means simply a party having no immediately apparent stake in the litigation either prior [or] subsequent to the act of removal. In other words[,] the key inquiry is whether the suit can be resolved without affecting the nonconsenting nominal defendants in any reasonably foreseeable way."

Tr. at 31:4-13 (Biehler)(quoting Hartford Fire Ins. v. Harleysville Mut. Ins., 736 F.3d at 260). The Insurance Defendants explained that the Waters Defendants do not affect other parties' rights and that the Waters Defendants have no stake in Hunt's dispute with the Insurance Defendants. See Tr. at 31:14-22 (Biehler).

The Insurance Defendants conceded that, if the claim "is not subject to arbitration," the Court should remand the case. Tr. at 32:1. See id. at 32:1-2 (Biehler). The Court accordingly asked: "So what you['re] wanting is me to decide the motion to compel arbitration before I determine the motion to remand?" Tr. at 32:10-12 (Court). The Insurance Defendants confirmed the Court's assessment: "Yes, . . . they are concomitant." Tr. at 32:13-14 (Biehler). The Court responded that arbitration resembles an affirmative defense and that, if the Court concludes that it has jurisdiction over affirmative defenses, the Court will acquire jurisdiction "over a large number of cases that I don't think Congress intended me to have." Tr. at 33:3-5 (Court). See id. at 32:15-33:9 (Court). The Insurance Defendants agreed with the Court and opined that the arbitration situation appeared more similar

> to the concept of saying[,] if your decision to exercise jurisdiction in the federal court is based upon an allegation of [a] violation of civil rights[,] there may or may not be a civil rights claim as opposed to an assault and battery claim[.] [B]ut when you take that case[,] you say[,] on its face value[,] based upon the allegations that are before the Court, . . . this establishes jurisdiction before me.

Tr. at 33:11-19 (Biehler). The Insurance Defendants opined that, similarly, the Court can decide that parties subject to arbitration "are not parties who have a stake in this [litigation.]" Tr. at 33:25 (Biehler). The Insurance Defendants further suggested that removal here implicates judicial efficiency, because, according to the Insurance Defendants, if the Court permits the case to remain in federal court, the Court avoids later seeing the case return to federal court. See Tr. at 33:25-34:6 (Biehler).

The Waters Defendants did not opine on the Insurance Defendants' Motion to Remand response, see Tr. at 34:8-12 (Court, Freedman), and the Court returned to Hunt, see Tr. at 34:15 (Court). Hunt repeated that the Court cannot decide the Motion to Compel if the Court does not

have jurisdiction. <u>See</u> Tr. at 34:16-21 (McGinn). The Court asked whether it always has jurisdiction to decide jurisdiction and whether "an arbitration agreement" is "close to that" idea. Tr. at 24:22-3 (Court); <u>id.</u> at 34:25 (Court). Hunt argued that, like in <u>Aguayo v. AMCO Insurance</u>, the Insurance Defendants want the Court to look behind the pleadings and to decide state law issues. <u>See</u> Tr. at 35:1-18 (McGinn). Hunt depicted the Insurance Defendants as arguing fraudulent joinder under the guise of nominal parties, and averred that they request that the Court decide the Motion to Compel before the Court determines its subject-matter jurisdiction. <u>See</u> Tr. at 35:19-36:4 (McGinn).

The Court indicated that it will likely remand the case. <u>See</u> Tr. at 38:21 (Court). According to the Court, the Arbitration Agreement likely does not change the Waters Defendants' interests. <u>See</u> Tr. at 38:12-15 (Court). The Court, moreover, expressed reluctance to create an exception to the rule governing diversity. <u>See</u> Tr. at 37:22-38:1 (Court).

All the parties agreed to grant the Motion to Stay. <u>See</u> Tr. at 38:20-39:8 (Court, McGinn, Biehler, Freedman). The Court then asked the Waters Defendants to begin arguing the Motion to Compel. <u>See</u> Tr. at 39:9-10 (Court). The Waters Defendants indicated that the Arbitration Agreement states that all claims will be subject to arbitration. <u>See</u> Tr. at 39:15-40:2 (Freedman). The Waters Defendants also contend that they have no duty to notify a patient that the Waters Defendants may earn gain an insurance premium if they have an arbitration agreement, so they misrepresented nothing. <u>See</u> Tr. at 40:18-41:1 (Freedman). Similarly, they argue that they had no fiduciary duty to Bennett, <u>see</u> Tr. at 41:1-41 (Freedman) and that Hunt offers no evidence that the Arbitration Agreement is unconscionable, fraudulent, or signed under duress, <u>see</u> Tr. at 41:25-42:13 (Freedman). The Waters Defendants noted that the parties provided mutual assent to

arbitration, and that the agreement benefits both them and Hunt.  See Tr. at 42:14-44:11 (Freedman).

Hunt responded that a relationship between a doctor and a patient is a fiduciary relationship, and that doctors should be held to higher standards and should not be allowed to conceal arbitration agreements.  See Tr. at 46:24-49:9 (McGinn).  Hunt indicated that he briefed procedural and substantive unconscionability.  See Tr. at 49:10-11 (McGinn).  Hunt indicated that the Arbitration Agreement was presented as simply a form to complete before a first visit.  See Tr. at 49:20-50:24 (McGinn).  Hunt also averred that the Arbitration Agreement might not apply to the estate's personal representative and that Bennett did not receive consideration for the contract. See Tr. at 51:15-52:10 (McGinn).  Hunt also noted that New Mexico disfavors contracts of perpetual duration, like the Arbitration Agreement.  See Tr. at 52:11-21 (McGinn).  The Court noted that Hunt seems to be asking for a carve-out from other rules governing arbitration agreements for agreements between patients and doctors.  See Tr. at 52:23-53:12 (Court).  Hunt noted that most healthcare providers do not enter arbitration agreements with patients.  See Tr. at 53:13-21 (McGinn).  The Court pressed that stockbrokers also have a fiduciary duty, but arbitration agreements are permitted in that context.  See Tr. at 54:11-17 (Court).  Hunt agreed but noted that nursing homes have a system in which they sit down and discuss arbitration agreements with family members and most healthcare providers do not have arbitration agreements with patients. See Tr. at 54:18-55:15 (McGinn).  The Court indicated that lawyers have arbitration agreements, to which Hunt responded that good ones do not.  See Tr. at 55:16-56:1 (McGinn).  The Court analogized doctors to lawyers, indicating that a fiduciary duty does not arise until the potential client becomes a client.  See Tr. at 56:17-24 (Court).  Hunt indicated that doctors generally have

different standards than attorneys.  See Tr. at 56:25-57: 58:21 (McGinn).  The Waters Defendants intervened to note that no evidence suggests that Bennett was unsophisticated and that doctors have a business relationship as well as a professional relationship with patients.  See Tr. at 59:1-16 (Freedman).  The Court indicated that it would likely not reach the Motion to Compel if it did not have subject-matter jurisdiction but that it would be hesitant to create an exception to the arbitration agreement rules for the doctor-patient relationships.  See Tr. at 61:10-14 (Court).

## LAW REGARDING DIVERSITY JURISDICTION

"Subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires: (i) complete diversity among the parties; and (ii) that 'the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.'"  Thompson v. Intel Corp., No. CIV 12-0620 JB/LFG, 2012 WL 3860748, at *12 (D.N.M. Aug. 27, 2012)(Browning, J.)(quoting 28 U.S.C. § 1332(a)).   As the Court has previously explained, "[t]he Supreme Court of the United States has described this statutory diversity requirement as 'complete diversity,' and it is present only when no party on one side of a dispute shares citizenship with any party on the other side of a dispute."  McEntire v. Kmart Corp., No. CIV 09-0567 JB/LAM, 2010 WL 553443, at *3 (D.N.M. 2010)(Browning, J.)(citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267-68 (1806); McPhail v. Deere & Co., 529 F.3d 947, 951 (10th Cir. 2008)).  The amount-in-controversy requirement is an "estimate of the amount that will be put at issue in the course of the litigation."  Valdez v. Metro. Prop. & Cas. Ins., 867 F. Supp. 2d 1143, 1178 (D.N.M. 2012)(Browning, J.)(citing McPhail v. Deere & Co., 529 F.3d at 956).  The Court will discuss the two requirements in turn.

1.    **Diversity in Citizenship.**

For diversity jurisdiction purposes, a person's domicile determines citizenship. <u>See</u> <u>Crowley v. Glaze</u>, 710 F.2d 676, 678 (10th Cir. 2013). "A person's domicile is defined as the place in which the party has a residence in fact and an intent to remain indefinitely, as of the time of the filing of the lawsuit." <u>McEntire v. Kmart Corp.</u>, 2010 WL 553443, at *3 (citing <u>Crowley v. Glaze</u>, 710 F.2d at 678). <u>See</u> <u>Freeport-McMoRan, Inc. v. KN Energy, Inc.</u>, 498 U.S. 426, 428 (1991)("We have consistently held that if jurisdiction exists at the time an action is commenced such jurisdiction may not be divested by subsequent events."). If neither a person's residence nor the location where the person has an intent to remain can be established, the person's domicile is that of his or her parents at the time of the person's birth. <u>See</u> <u>Gates v. Comm'r</u>, 199 F.2d 291, 294 (10th Cir. 1952)("[T]he law assigns to every child at its birth a domicile of origin. The domicile of origin which the law attributes to an individual is the domicile of his parents. It continues until another domicile is lawfully acquired."). Additionally, "while residence and citizenship are not the same, a person's place of residence is prima facie evidence of his or her citizenship." <u>McEntire v. Kmart Corp.</u>, 2010 WL 553443, at *3 (citing <u>State Farm Mut. Auto. Ins. v. Dyer</u>, 19 F.3d 514, 520 (10th Cir. 1994)). On the other hand, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

2.    <u>**Amount in Controversy.**</u>

For a federal district court to have original jurisdiction over a dispute, the statutory amount-in-controversy requirement, which presently stands at $75,000.00, must be satisfied as between a single plaintiff and a single defendant; "a plaintiff cannot aggregate independent claims against multiple defendants to satisfy the amount-in-controversy requirement," nor can multiple plaintiffs

aggregate their claims against a single defendant to exceed the threshold. Martinez v. Martinez, No. CIV 09-0281 JB/KBM, 2010 WL 1608884, at *18 (D.N.M. March 30, 2010)(Browning, J.). If multiple defendants are jointly liable, or jointly and severally liable, on some of the claims, however, those claims' amounts may be aggregated to satisfy the amount-in-controversy requirement as to all defendants jointly liable for the claims. See Alberty v. W. Sur. Co., 249 F.2d 537, 538 (10th Cir. 1957); Martinez v. Martinez, 2010 WL 1608884, at *18. Similarly, multiple plaintiffs may aggregate their claims' amounts against a single defendant if the claims are not "separate and distinct." Martin v. Franklin Capital Corp., 251 F.3d at 1292. Multiple claims by the same plaintiff against the same defendant may be aggregated, even if the claims are entirely unrelated. See 14A Charles A. Wright et al., Federal Practice and Procedure, Jurisdiction § 3704, at 566-95 (4th ed. 2011). While the rules on aggregation sound complicated, they are not in practice: if a single plaintiff -- regardless whether he or she is the only plaintiff who will share in the recovery -- can recover over $75,000.00 from a single defendant -- regardless whether the defendant has jointly liable co-defendants -- then the court has original jurisdiction over the dispute between that plaintiff and that defendant. The court can then exercise supplemental jurisdiction over other claims and parties that "form part of the same case or controversy under Article III," 28 U.S.C. § 1367(a), meaning that they "derive from a common nucleus or operative fact," United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1996).

The defendant must satisfy the amount-in-controversy requirement by a preponderance of the evidence. See McPhail v. Deere & Co., 529 F.3d at 953, 955 ("[T]he defendant must affirmatively establish jurisdiction by proving jurisdictional facts that ma[k]e it possible that $75,000 [i]s in play."). In the context of establishing an amount-in-controversy, the plaintiff's

chosen amount of damages in the complaint does not bind the defendant seeking removal, as any other rule would allow a plaintiff to avoid federal jurisdiction "merely by declining to allege the jurisdictional amount [in controversy]." McPhail v. Deere & Co., 529 F.3d at 955. McPhail v. Deere & Co. holds that a defendant meets the burden of establishing jurisdictional facts if the defendant proves "jurisdictional facts that made it possible that $75,000 [is] in play." 529 F.3d at 955.

The Supreme Court recently clarified that a defendant seeking removal to federal court need only include in the notice of removal a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. See Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 554 (2014). The district court should consider outside evidence and find by a preponderance of the evidence whether the amount in controversy is satisfied "only when the plaintiff contests, or the court questions, the defendant's allegation." Dart Cherokee Basin Operating Co., LLP v. Owens, 135 S. Ct. at 554.

## LAW REGARDING REMOVAL

"If a civil action filed in state court satisfies the requirements for original federal jurisdiction, the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court 'embracing the place where such action is pending.'" Thompson v. Intel Corp., 2012 WL 3860748, at *4 (quoting 28 U.S.C. § 1441(a); and citing Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d 1072, 1076 (10th Cir. 1999)). Defendants may remove a civil action to federal court where the district court would have original jurisdiction over the case based upon diversity of citizenship. See Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d at 1076 (citing Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996)). Nonetheless, federal courts "are to . . . narrowly [construe

removal statutes] in light of our constitutional role as limited tribunals." Pritchett v. Office Depot, Inc., 404 F.3d 1090, 1095 (10th Cir. 2005)(citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); United States ex rel. King v. Hillcrest Health Ctr., 264 F.3d 1271, 1280 (10th Cir. 2001)). "All doubts are to be resolved against removal." Fajen v. Found. Reserve Ins., 683 F.2d 331, 333 (10th Cir. 1982)(citing Greenshields v. Warren Petroleum Corp., 248 F.2d 61, 65 (10th Cir. 1957)). The defendant seeking to remove an action to federal court bears the burden of establishing the district court's subject-matter jurisdiction over the case. See Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002).

**1.        The Presumption Against Removal.**

Federal courts are courts of limited jurisdiction; thus, the defendant seeking removal must overcome some measure of a presumption against removal jurisdiction. See Fajen v. Found. Reserve Ins., 683 F.2d at 333; Bonadeo v. Lujan, No. CIV 08-0812 JB/ACT, 2009 WL 1324119, at *4 (D.N.M. April 30, 2009)(Browning, J.)("Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand."). The defendant seeking removal must establish that federal court jurisdiction is proper "by a preponderance of the evidence." McPhail v. Deere & Co., 529 F.3d at 953. See also Bonadeo v. Lujan, 2009 WL 1324119, at *4 ("As the removing party, the defendant bears the burden of proving all jurisdictional facts and of establishing a right to removal.").

**2.        Procedural Requirements for Removal.**

Section 1446 of Title 28 of the United States Code governs the procedure for removal. "Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed." Thompson v. Intel Corp., 2012 WL 3860748, at *5. A removal that does not comply

with the express statutory requirements is defective, and the case must be remanded to state court. See Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d at 1077. See also Chavez v. Kincaid, 15 F. Supp. 2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The [r]ight to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").

Section 1446(a) provides that a party seeking removal of a matter to federal court shall file a notice of removal in the district and division where the state action is pending, "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." 28 U.S.C. § 1446(a). Such notice of removal is proper if filed within thirty days from the date when the case qualifies for federal jurisdiction. See 28 U.S.C. § 1446(b); Caterpillar Inc. v. Lewis, 519 U.S. at 68-69. The Tenth Circuit has further elaborated that, for the thirty-day period to begin to run, "this court requires clear and unequivocal notice from the [initial] pleading itself" that federal jurisdiction is available. Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir. 1998). The Tenth Circuit specifically disagrees with "cases from other jurisdictions which impose a duty to investigate and determine removability where the initial pleading indicates that the right to remove may exist." Akin v. Ashland Chem. Co., 156 F.3d at 1036.

### 3.      Fraudulent Joinder.

A defendant may remove a case to federal court based upon diversity jurisdiction in the absence of complete diversity if a plaintiff joins a nondiverse party fraudulently to defeat federal jurisdiction. See Am. Nat'l Bank & Tr. Co. v. Bic Corp., 931 F.2d 1411, 1412 (10th Cir. 1991); Hernandez v. Menlo Logistics, Inc., No. CIV 12-0907, 2013 WL 5934411, at *14-17 (D.N.M. Sept. 30, 2013)(Browning, J.). "'[A] fraudulent joinder analysis [is] a jurisdictional inquiry,'"

Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d at 1214 (alteration in Bio-Tec Envtl., LLC v. Adams)(quoting Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d 1242, 1247 (10th Cir. 2004)), and, thus, the Tenth Circuit instructs that the district court should "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available," Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82, 85 (10th Cir. 1964)(citing Chesapeake & Ohio Ry. v. Cockrell, 232 U.S. 146 (1913); McLeod v. Cities Serv. Gas Co., 233 F.2d 242 (10th Cir. 1956); Nunn v. Feltinton, 294 F.2d 450 (5th Cir. 1961); Morris v. E. I. DuPont DeNemours & Co., 68 F.2d 788 (8th Cir. 1934)).  "A district court may disregard a nondiverse party named in the state court complaint and retain jurisdiction if joinder of the nondiverse party is a sham or fraudulent." Baeza v. Tibbetts, No. CIV 06-0407 MV/WPL, 2006 WL 2863486, at *3 (D.N.M. July 7, 2006)(Vázquez, J.).  The Supreme Court has stated: "Merely to traverse the allegations upon which the liability of the resident defendant is rested or to apply the epithet 'fraudulent' to the joinder will not suffice: the showing must be such as compels the conclusion that the joinder is without right and made in bad faith." Chesapeake & Ohio Ry. v. Cockrell, 232 U.S. at 152.  The Tenth Circuit has explained that allegations of fraudulent joinder complicate the analysis whether removal is proper, because, "[w]hile a court normally evaluates the propriety of a removal by determining whether the allegations on the face of the complaint satisfy the jurisdictional requirements, fraudulent joinder claims are assertions that the pleadings are deceptive." Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x 911, 913, 2006 WL 2879057, at *2 (10th Cir. 2006)(unpublished).[2]

---

[2]Nerad v. AstraZeneca Pharmaceuticals, Inc. is an unpublished opinion, but the Court can rely on an unpublished opinion from the Tenth Circuit to the extent its reasoned analysis is

The party asserting fraudulent joinder bears the burden of proof. See Montano v. Allstate Indem. Co., 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir. 2000)(unpublished table opinion)("The case law places a heavy burden on the party asserting fraudulent joinder."). "To justify removal based on diversity jurisdiction, a defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty." Couch v. Astec Indus., Inc., 71 F. Supp. 2d 1145, 1146-47 (D.N.M. 1999)(Baldock, J.)(citing McLeod v. Cities Serv. Gas Co., 233 F.2d at 246). Before 2013, the most recent published Tenth Circuit decision to state the burden of proof for demonstrating fraudulent joinder was issued over forty years earlier in Smoot v. Chicago, Rock Island & Pacific Railroad, 378 F.2d 879 (10th Cir. 1967). The Tenth Circuit said that fraudulent joinder must be "established with complete certainty upon undisputed evidence." Smoot v. Chi., Rock Island & Pac. R.R., 378 F.2d at 882.

Actual fraud -- e.g., a plaintiff colluding with a nondiverse defendant to defeat removal[3] -- suffices to establish fraudulent joinder, but it is not required. See McLeod v. Cities Serv. Gas

---

persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that Nerad v. AstraZeneca Pharmaceuticals, Inc., Hicks v. Cadle, Co., 355 F. App'x 186 (10th Cir. 2009)(unpublished), Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592 (10th Cir. 2000) table opinion, Brazell v. Waite, 525 F. App'x 878 (10th Cir. 2013), and National Union Fire Insurance of Pittsburgh v. Kozeny, 19 F. App'x 815 (10th Cir. 2001), have persuasive value with respect to material issues, and will assist the Court in its disposition of this Memorandum Opinion and Order.

[3]Collusion might look something like this: a plaintiff names a nondiverse defendant under a highly dubious theory of liability; the plaintiff contacts the defendant and offers to dismiss the case at the end of the one-year limitation, see 28 U.S.C. § 1446(c), if the defendant agrees not to

Co., 233 F.2d at 246 ("[C]ollusion in joining a resident defendant for the sole purpose of preventing removal . . . may be shown by any means available."). In Smoot v. Chicago, Rock Island & Pacific Railroad, the Tenth Circuit stated two other bases for finding fraudulent joinder: (i) "[t]he joinder of a resident defendant against whom no cause of action is stated is a patent sham," 378 F.2d at 882 (citing Parks v. N.Y. Times Co., 308 F.2d 474 (5th Cir. 1962)); or (ii) "though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists," Smoot v. Chi., Rock Island & Pac. R.R., 378 F.2d at 882 (citing Lobato v. Pay Less Drug Stores, Inc., 261 F.2d 406 (10th Cir. 1958)). In Smoot v. Chicago, Rock Island & Pacific Railroad, the Tenth Circuit found fraudulent joinder, because the joined party's non-liability was "established with complete certainty upon undisputed evidence." 378 F.2d at 882. "This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty." Smoot v. Chi., Rock Island & Pac. R.R., 378 F.2d at 882. In Smoot v. Chicago, Rock Island & Pacific Railroad, the plaintiff died when his car collided with a freight train. See 378 F.2d at 881. The plaintiff's estate sued the railroad company and joined a non-diverse alleged employee as a defendant. See 378 F.2d at 881. The parties did not dispute that the diversity-destroying party's employment with the railroad company had "terminated almost fifteen months before the collision and that he was in no way connected with the acts of negligence ascribed to him." 378 F.2d at 881.

In recent unpublished decisions, the Tenth Circuit has adopted different articulations of the burden of proof for fraudulent joinder and draws two articulations from the United States Court of

---

move to dismiss before the one-year mark; and the defendant agrees to the arrangement to save litigation costs, as well as to avoid any slim chance that the court decides to recognize the plaintiff's theory of liability against it.

Appeals for the Fifth Circuit. In <u>Montano v. Allstate Indemnity Co.</u>, the Tenth Circuit quotes favorably <u>Hart v. Bayer Corp.</u>, 199 F.3d 239 (5th Cir. 2000):

> To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility [plaintiff] would be able to establish a cause of action against [the joined party], in state court. In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party. We are then to determine whether that party has any possibility of recovering against the party whose joinder is questioned.

<u>Montano v. Allstate Indem. Co.</u>, 2000 WL 525592, at *4-5 (alterations in original)(quoting <u>Hart v. Bayer Corp.</u>, 199 F.3d at 246). The Tenth Circuit stated that the standard for proving fraudulent joinder "is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action commenced." <u>Montano v. Allstate Indem. Co.</u>, 211 F.3d 1278, 2000 WL 525592, at *2. The Tenth Circuit in <u>Montano v. Allstate Indemnity Co.</u> also quoted <u>Batoff v. State Farm Insurance</u>, 977 F.2d 848 (3d Cir. 1992), which states: "'A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction.'" <u>Montano v. Allstate Indem. Co.</u>, 211 F.3d 1278, 2000 WL 525592, at *2 (quoting <u>Batoff v. State Farm Ins.</u>, 977 F.2d at 853).

In <u>Nerad v. AstraZeneca Pharmaceuticals, Inc.</u>, the Tenth Circuit adopted a different articulation of the burden of proof. <u>See</u> 203 F. App'x at 913. The Tenth Circuit stated that, where fraudulent joinder is asserted, "the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." 203 F. App'x at 913 (citing <u>Badon v. RJR Nabisco, Inc.</u>, 224 F.3d 382, 393 (5th Cir. 2000)). The Tenth Circuit

explained that "[a] 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law." Nerad v. AstraZeneca Pharma., Inc., 203 F. App'x at 913.

The Fifth Circuit recognized the inconsistencies among various articulations of the standard for fraudulent joinder and addressed the problem in Travis v. Irby, 326 F.3d 644 (5th Cir. 2003):

> Neither our circuit nor other circuits have been clear in describing the fraudulent joinder standard. The test has been stated by this court in various terms, even within the same opinion. For example, the Griggs [v. State Farm Lloyds, 181 F.3d 694 (5th Cir. 1999),] opinion states,
>
> > To establish that a non-diverse defendant has been fraudulently joined to defeat diversity, the removing party must prove . . . that there is *absolutely no possibility* that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court.
>
> 181 F.3d at 699 (emphasis added)(citing Burden v. Gen. Dynamics Corp., 60 F.3d 213, 317 (5th Cir. 1995)). The Griggs opinion later restates that test as follows -- "Stated differently, we must determine whether there is any reasonable basis for predicting that [the plaintiff] might be able to establish [the non-diverse defendant's] liability on the pleaded claims in state court." 181 F.3d at 699 (emphasis added). Similarly, in summing up federal law, Moore's Federal Practice states at one point: "To establish fraudulent joinder, a party must demonstrate . . . the *absence of any possibility* that the opposing party has stated a claim under state law." 16 Moore's Federal Practice § 107.14[2][c][iv][A] (emphasis added). It then comments: "The ultimate question is whether there is arguably a *reasonable basis* for predicting that state law might impose liability on the facts involved." Although these tests appear dissimilar, "absolutely no possibility" vs. "reasonable basis," we must assume that they are meant to be equivalent because each is presented as a restatement of the other.

Travis v. Irby, 326 F.3d at 647 (emphases in Travis v. Irby). The Fifth Circuit has settled upon this phrasing:

> [T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

Smallwood v. Ill. Cent. R.R., 385 F.3d 568, 573 (5th Cir. 2004)("To reduce possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not.").

In Zufelt v. Isuzu Motors America, LCC, 727 F. Supp. 2d 1117, 1124 (D.N.M. 2009)(Browning, J.), the Court addressed the standard that courts should use when addressing fraudulent joinder and concluded that, to establish that a party was fraudulently joined, a defendant has the burden of demonstrating that "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined. 727 F. Supp. 2d at 1124-25 (citing Montano v. Allstate Indem. Co., 211 F.3d 1278, 2000 WL 525592, at *4-5). The Court explained:

> [T]his District has consistently adopted the "possibility" standard when assessing fraudulent joinder claims. See Allen v. Allstate Ins. Co., No. CIV 08-0733 [JB/RHS], 2008 WL 6045497 (D.N.M. Oct. 31, 2008)(Browning, J.)(holding that the claims asserted against the non-diverse defendant were "possibly viable under New Mexico law, and . . . sufficient to preclude federal jurisdiction"); Baeza v. Tibbetts, 2006 U.S. Dist. LEXIS 95317, at *11, 2006 WL 2863486 (stating that "[r]emand is required if any one of the claims against [the defendant] is possibly viable"); Provencio v. Mendez, No. CIV 05-623, 2005 U.S. Dist. LEXIS 39012, at *25, 2005 WL 3662957 (D.N.M. Sept. 29, 2005)(Browning, J.)(stating that "there must be no possibility the [p]laintiffs have a claim against [the non-diverse defendant]"); Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (stating that, to defeat removal jurisdiction, "[t]he plaintiff need only demonstrate the possibility of the right to relief"). This Court, in Couch v. Astec Indus., Inc., noted with approval the language of the United States Court of Appeals for the Eleventh Circuit, which states that "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (quoting Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998))(emphasis in original).

Zufelt v. Isuzu Motors Am., LCC, 727 F. Supp. 2d at 1229.

In Brazell v. Waite, the Tenth Circuit stated that the "removing party must show that the plaintiff has 'no cause of action' against the fraudulently joined defendant," but it did not further elaborate on that burden. 2013 WL 2398893, at *3 (citing Dodd v. Fawcett Publ'ns, Inc., 329 F.2d at 85; Roe v. Gen. Am. Life Ins., 712 F.2d 450, 452 n.* (10th Cir. 1983)). Then, in 2013, the Tenth Circuit published its first opinion since 1946 regarding the burden of proof for demonstrating fraudulent joinder: "'To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" Dutcher v. Matheson, 733 F.3d 980, 988 (10th Cir. 2013(quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011)). In Dutcher v. Matheson, the Tenth Circuit reviewed a district court's holding that it had diversity jurisdiction over a case where State of Utah citizens sued ReconTrust, a State of Texas-based national bank, Stuart T. Matheson, a Utah citizen, and Matheson's law firm. See 733 F.3d at 983, 987. The plaintiffs alleged that Matheson and his law firm enabled ReconTrust to conduct an illegal nonjudicial foreclosure by holding the foreclosure sales on behalf of the Texas-based bank. See 733 F.3d at 983. The defendants removed the case to federal court and alleged that the plaintiffs fraudulently joined the Utah defendants. See 733 F.3d at 983. The district court agreed, concluding that, under Utah law, "an attorney cannot be held liable to a non-client absent fraud, collusion or privity of contract." 733 F.3d at 988. The Tenth Circuit disagreed with that characterization of Utah law, concluding instead that, in the case on which the defendants relied, the Supreme Court of Utah "has simply limited the circumstances in which a lawyer owes a duty of care to non-clients from actions arising out of the provision of

legal services." 733 F.3d at 988. In rejecting the claim of fraudulent joinder, the Tenth Circuit said

> that does not mean that the plaintiffs have stated a valid claim against Matheson and his law firm. Or even that Matheson and his law firm are not somehow fraudulently joined. But the defendants needed to clear a high hurdle to prove something they have yet to prove, i.e., fraudulent joinder.

733 F.3d at 989.

The Tenth Circuit did not elaborate on the defendant's burden to show fraudulent joinder, except to say that it is "a high hurdle." Dutcher v. Matheson, 733 F.3d at 989. It quoted, however, Cuevas v. BAC Home Loans Servicing, LP, a Fifth Circuit opinion that repeats the clarified standard from the Smallwood v. Illinois Central Railroad case. See Dutcher v. Matheson, 733 F.3d at 988 (quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249).

> Under the second way, the test is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." [Smallwood v. Ill. Cent. R.R., 385 F.3d at 573.] If there is no reasonable basis of recovery, then the court can conclude that the plaintiff's decision to join the in-state defendant was indeed improper, unless that showing compels the dismissal of *all* defendants. *McDonal*[v. Abbott Labs., 408 F.3d 177,] 183 [(5th Cir. 2005)]; *Smallwood,* 385 F.3d at 575. There is no improper joinder if the defendants' showing "compels the same result for the resident and nonresident defendants," because this simply means that "the plaintiff's case is ill founded as to all of the defendants." *McDonal,* 408 F.3d at 183 (citation and internal quotation marks omitted); *Smallwood,* 385 F.3d at 574 (citation and internal quotation marks omitted). Such a defense is more properly an attack on the merits of the claim, rather than an inquiry into the propriety of the joinder of the in-state defendant. *Id.*

Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249. Based on the Tenth Circuit's history of relying on Fifth Circuit analysis in fraudulent joinder cases, the Tenth Circuit would likely approve this additional explanation of the fraudulent joinder standard. Accordingly, the Court will use the following standard for fraudulent joinder: whether the defendant has demonstrated that

there is no possibility that the plaintiff will obtain a judgment against an in-state defendant. <u>Cf.</u> <u>Zufelt v. Isuzu Motors Am., LCC</u>, 727 F. Supp. 2d at 1124-25 (concluding that fraudulent joinder occurs when "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined). No case sets forth the burden of proof that applies to (much rarer) allegations of actual fraud, such as plaintiff-defendant collusion, but the Court concludes that the clear-and-convincing standard -- the usual standard for fraud -- is appropriate. <u>See</u>, <u>e.g.</u>, <u>United States v. Thompson</u>, 279 F.2d 165, 167 (10th Cir. 1960)("An allegation of fraud is a serious matter; it is never presumed and must be proved by clear and convincing evidence." (citing <u>Pac. Royalty Co. v. Williams</u>, 227 F.2d 49 (10th Cir. 1955); <u>Koscove v. Comm'r</u>, 225 F.2d 85 (10th Cir. 1955))).

The Tenth Circuit cannot review a district court's order to remand based on a finding of fraudulent joinder. <u>See</u> <u>Nerad v. AstraZeneca Pharms., Inc.</u>, 203 F. App'x at 913 (holding that, because the district court remanded based on its conclusion that it lacked subject-matter jurisdiction at the time of removal, 28 U.S.C. § 1447(d) precluded the Tenth Circuit from reviewing the order). The fraudulent joinder inquiry on a motion to remand is a subject matter jurisdiction inquiry. <u>See</u> <u>Albert v. Smith's Food & Drug Ctrs., Inc.</u>, 356 F.3d at 1247.

## LAW REGARDING ARBITRATION AGREEMENTS

An arbitration agreement is a contract or a provision in a contract whereby parties agree to "settle by arbitration a controversy . . . arising out of such contract or transaction." 9 U.S.C. § 2. Both federal and New Mexico law reflect a public policy in favor of arbitration agreements. <u>See</u> <u>Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 39 F.3d 1482, 1488-89 (10th Cir. 1994)("There is a strong federal policy encouraging the expeditious and inexpensive

resolution of disputes through arbitration."); United Tech. & Res., Inc. v. Dar Al Islam, 1993-NMSC-005, ¶ 11, 846 P.2d 307, 309 ("The legislature and the courts of New Mexico 'have expressed a strong policy preference for resolution of disputes by arbitration.'" (quoting Dairyland Ins. v. Rose, 1979-NMSC-021, ¶ 14, 591 P.2d 281, 284)). To be enforceable, an arbitration agreement must be validly formed pursuant to state contract law principles -- e.g., the arbitration agreement must not be illusory or unconscionable. See Salazar v. Citadel Commc'ns Corp., 2004-NMSC-013, ¶ 8, 90 P.3d 466, 469 ("To determine whether the agreement to arbitrate is valid, courts look to general state contract law . . . .").

1. **Federal Law.**

"The FAA reflects the fundamental principle that arbitration is a matter of contract." Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010)(citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). "[T]he basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate." Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 270 (1995). "The FAA thereby places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." Rent-A-Center, W., Inc. v. Jackson, 561 U.S. at 67-68 (citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006); Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)). The FAA governs motions to compel arbitration involving contracts related to commerce. See 9 U.S.C. §§ 1-16.

Under § 4 of the FAA, a party "aggrieved" by another party's failure "to arbitrate under a written agreement for arbitration" may petition a federal court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. If one party's

refusal to arbitrate under a written agreement aggrieves another party, the district court, upon petition, "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4. Section 2, the "primary substantive provision of the Act," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. at 24, provides: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2.  "If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4."  Rent-A-Center, W., Inc. v. Jackson, 561 U.S. at 64.

Upon a finding that a matter can be referred arbitration, the FAA also indicates that the district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3. Notwithstanding 9 U.S.C. § 3's terms, however, several Courts of Appeals have concluded that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."  Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001).  See Green v. Ameritech Corp., 200 F.3d 967, 973 (6th Cir. 2000)("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 156 n.21 (1st Cir. 1998); Alford v.

Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992); Sparling v. Hoffman Constr. Co., 864 F.2d 635, 638 (9th Cir. 1988).

The Tenth Circuit has cautioned that, when one of the parties petitions the court to stay an action pending compulsory arbitration, 9 U.S.C. § 3's mandatory language is binding, and it is error for the court to dismiss the action. See Adair Bus Sales, Inc. v. Blue Bird Corp., 25 F.3d 953, 955 (10th Cir. 1994). When, however, the party seeking to compel arbitration requests the court for dismissal, and there is no evidence in the record of any party requesting a stay, it is not error for the district court to dismiss the case. See Armijo v. Prudential Ins. of Am., 72 F.3d 793, 797 (10th Cir. 1995); Cornoyer v. AT&T Mobility Servs., LLC, No. CIV 15-0474, 2016 WL 6404853, at *7-8 (D.N.M. Oct. 5, 2016)(Browning, J.); Thompson v. THI of N.M. at Casa Arena Blanca, LLC, No. CIV 05-1331, 2006 WL 4061187, at *16 (D.N.M. Sept. 12, 2006)(Browning, J.)(dismissing a case where the plaintiff neither requested a stay nor argued that some claims may not be arbitrable). See also Evangelical Lutheran Good Samaritan Soc'y v. Moreno, 277 F. Supp. 3d 1191, 1210 (D.N.M. 2017)(Browning, J.).

**2.      New Mexico Law.**

New Mexico's Uniform Arbitration Act, N.M. Stat. Ann. §§ 44-7a-1 to -32 ("NMUAA"), provides that an agreement to submit any controversy arising between the parties to arbitration is "valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." N.M. Stat. Ann. § 44-7A-7(a). If the court concludes that there is an enforceable agreement to arbitrate, it shall order the parties to arbitrate. See N.M. Stat. Ann. § 44-7A-8(a). Where the provision for arbitration is disputed, the court's function is to determine

whether there is an agreement to arbitrate and to order arbitration where an agreement is found. See N.M. Stat. Ann. § 44-7A-8(a).

Similar to the federal courts' interpretation of the FAA, New Mexico courts have viewed the NMUAA as an expression of a public policy favoring arbitration. See United Tech. & Res., Inc. v. Dar Al Islam, 1993-NMSC-005, ¶ 11, 846 P.2d at 309 ("The legislature and the courts of New Mexico 'have expressed a strong policy preference for resolution of disputes by arbitration.'" (quoting Dairyland Ins. v. Rose, 1979-NMSC-021, ¶ 14, 591 P.2d at 284)). More specifically, New Mexico courts have construed the NMUAA's legislative purpose as an attempt to reduce the court's caseload. See Bd. of Educ. Taos Mun. Sch. v. Architects, Taos, 1985-NMSC-102, ¶ 10, 709 P.2d 184, 186 ("A concern for preserving scarce judicial resources lies at the heart of the preference for arbitration."); Dairyland Ins. v. Rose, 1979-NMSC-021, ¶ 19, 591 P.2d at 285 (concluding that "the legislative intent in enacting the [NMUAA], and the policy of the courts in enforcing it, is to reduce caseloads in the courts, not only by allowing arbitration, but also by requiring controversies to be resolved by arbitration where contracts or other documents so provide"). In New Mexico, when the court finds that an arbitration agreement exists and is valid, then, in accordance with the NMUAA, the court has a duty to enforce the agreement's provisions and order adherence to that arbitration agreement. See Bernalillo Cty. Med. Ctr. Emps' Ass'n Local 2370 v. Cancelosi, 1978-NMSC-086, ¶¶ 4-5, 587 P.2d 960, 961. Consistent with this understanding, the Supreme Court of New Mexico has interpreted the NMUAA to limit the court's role to determining if an arbitration agreement exists and, if so, to order the parties to arbitration:

> When a broad and general arbitration clause is used, as in this case, the court should be very reluctant to interpose itself between the parties and the arbitration upon which they have agreed. When the parties agree to arbitrate any potential claims or disputes arising out of their relationships by contract or otherwise, the arbitration

agreement will be given broad interpretation unless the parties themselves limit arbitration to specific areas or matters. Barring such limiting language, the courts only decide the threshold question of whether there is an agreement to arbitrate. If so, the court should order arbitration. If not, arbitration should be refused.

K.L. House Constr. Co. v. City of Albuquerque, 1978-NMSC-025, ¶ 8, 576 P.2d 752, 754.

Accordingly, in New Mexico, parties entering a contract providing for the resolution of disputes through arbitration are bound by their agreement to arbitrate. See Christmas v. Cimarron Realty Co., 1982-NMSC-079, ¶¶ 7-10, 648 P.2d 788, 790; Evangelical Lutheran Good Samaritan Soc'y v. Moreno, 277 F. Supp. 3d at 1211.

### 3. Public Policy Favoring Enforcement of an Arbitration Agreement.

"There is a strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration." Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d at 1488-89. See Southland Corp. v. Keating, 465 U.S. 1, 10 (1984)("Congress declared a national policy favoring arbitration."); Hill v. Ricoh Ams. Corp., 603 F.3d 766, 771 (10th Cir. 2010)("[T]he FAA is a 'congressional declaration of a liberal federal policy favoring arbitration agreements.'" (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. at 24)). Congress enacted the FAA with the express purpose of granting arbitration agreements the same enforceability as any other contract provision. See Volt Info. Scis., Inc. v. Bd. of Trs., 489 U.S. at 474 (stating that Congress designed the FAA to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and place such agreements upon the same footing as other contracts"). When arbitration's applicability is in dispute, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)(quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. at 24-25). New Mexico state courts also view

arbitration as a "highly favored" method of resolving disputes, "in part because '[i]t promotes both judicial efficiency and conservation of resources by all parties.'" Piano v. Premier Distrib. Co., 2005-NMCA-018, ¶ 5, 107 P.3d 11, 13 (alteration in Piano v. Premier Distrib. Co.). See Cornoyer v. AT&T Mobility Servs., LLC, 2016 WL 6404853, at *8.

### 4.     A Valid Arbitration Agreement's Existence.

The Supreme Court has noted that "[a]rbitration is simply a matter of contract between parties; it is a way to resolve those disputes -- but only those disputes -- that the parties have agreed to submit to arbitration." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995). Courts must interpret arbitration clauses liberally, and all doubts must be resolved in favor of arbitration. See Hicks v. Cadle, Co., 355 F. App'x 186, 192 (10th Cir. 2009(unpublished)("We resolve any doubts in favor of arbitrability." (citing Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 209 (1991))); Armijo v. Prudential Ins. of Am., 72 F.3d at 797-98 (stating that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," and that "arbitration clauses must be interpreted liberally, and any doubts should be resolved in favor of arbitration," and holding that the plaintiffs had "failed to rebut the presumption of arbitrability.").

While "the presumption in favor of arbitration is properly applied in interpreting the scope of an arbitration agreement, . . . this presumption disappears when the parties dispute the existence of a valid arbitration agreement." Dumais v. Am. Golf Corp., 299 F.3d 1216, 1220 (10th Cir. 2002). See Riley Mfg. Co. v. Anchor Glass Container Corp., 157 F.3d 775, 779 (10th Cir. 1998)("When the dispute is whether there is a valid and enforceable arbitration agreement in

the first place, the presumption of arbitrability falls away."); <u>Presbyterian Healthcare Servs. v. Goldman, Sachs & Co.</u>, 112 F. Supp. at 1157.

In the Tenth Circuit, and in the courts of New Mexico, the "existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." <u>Avedon Eng'g Inc. v. Seatex</u>, 126 F.3d 1279, 1287 (10th Cir. 1997). <u>See</u> <u>K.L. House Constr. Co. v. City of Albuquerque</u>, 1978-NMSC-025, ¶ 8, 576 P.2d at 754 ("[T]he courts only decide the threshold question of whether there is an agreement to arbitrate. If so, the court should order arbitration."). "Like other contracts . . . [arbitration agreements] may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" <u>Rent-A-Center, W., Inc. v. Jackson</u>, 561 U.S. at 68 (quoting <u>Doctor's Assocs., Inc. v. Casarotto</u>, 517 U.S. 681, 687 (1996)). <u>See</u> <u>Cornoyer v. AT&T Mobility Servs., LLC</u>, 2016 WL 6404853, at *8-11. <u>Cf.</u> <u>K.L. House Constr. Co. v. City of Albuquerque</u>, 1978-NMSC-025, ¶ 8, 576 P.2d at 754 (holding that, because a valid arbitration clause existed, the parties had to arbitrate all disputes when the "subject matter of the dispute has a reasonable relationship to the subject matter of the contract").

### 5. <u>Consideration and Illusory Arbitration Agreements.</u>

"To determine whether the agreement to arbitrate is valid, courts look to general state contract law, with the caveat that state laws that are specifically hostile to arbitration agreements are preempted by the FAA." <u>Salazar v. Citadel Commc'ns Corp.</u>, 2004-NMSC-013, ¶ 8, 90 P.3d 466, 469 (citing <u>Perry v. Thomas</u>, 482 U.S. 483, 492 n.9 (1987)). "It is for the trial court, and not the arbitrator, to decide whether a valid agreement to arbitrate exists." <u>Sisneros v. Citadel Broad. Co.</u>, 2006-NMCA-102, ¶ 13, 142 P.3d 34, 39. It is a fundamental tenet of contract law "that each party to a contract has a duty to read and familiarize himself with the contents of the contract, each

party generally is presumed to know the terms of the agreement, and each is ordinarily bound thereby." Ballard v. Chavez, 1994-NMSC-007, ¶ 8, 868 P.2d 646, 648. Under New Mexico law, "'to be legally enforceable, a contract must be factually supported by an offer, an acceptance, consideration, and mutual assent.'" Garcia v. Middle Rio Grande Conservancy Dist., 1996-NMSC-029, ¶ 9, 918 P.2d 7, 10 (quoting Hartbarger v. Frank Paxton Co., 1993-NMSC-029, ¶ 7, 857 P.2d 776, 780).

A valid contract must have mutuality of obligation. Williams v. Waller, 1947-NMSC-033, ¶ 9, 181 P.2d 798, 800. Absent evidence of a "bargained-for exchange between the parties," an agreement lacks consideration and is unenforceable. Smith v. Vill. of Ruidoso, 1999-NMCA-151, ¶ 33, 994 P.2d 50, 58. "Under general New Mexico contract law, an agreement that is subject to unilateral modification or revocation is illusory and unenforceable." Salazar v. Citadel Commc'ns Corp., 2004-NMSC-013, ¶ 9, 90 P.3d at 469. "This principle applies equally to agreements to arbitrate." Salazar v. Citadel Commc'ns Corp., 2004-NMSC-013, ¶ 9, 90 P.3d at 469. The Supreme Court of New Mexico has concluded that, if a party "reserves the right to change the agreement unilaterally, and at any time," the party "has not really promised anything at all and should not be permitted to bind the other party." Salazar v. Citadel Commc'ns Corp., 2004-NMSC-013, ¶ 9, 90 P.3d at 469.

In Salazar v. Citadel Communications Corp., the Supreme Court of New Mexico held that, because Citadel Communications reserved the right to modify any provision of its employee handbook at any time, including the arbitration agreement contained therein, the agreement to arbitrate was "an unenforceable illusory promise." Salazar v. Citadel Commc'ns Corp., 2004-NMSC-013, ¶ 16, 90 P.3d at 471. In contrast, the Court of Appeals of New Mexico in Sisneros v.

Citadel Broadcasting Co. concluded that the arbitration policy at issue restricted Citadel Broadcasting's right to terminate or amend the agreement to arbitrate, and, thus, when Citadel Broadcasting terminated Sisneros' employment, Citadel Broadcasting was bound to arbitrate the dispute, just as Sisneros was bound to arbitrate, and therefore mutual obligation existed and the arbitration agreement was not illusory. See Sisneros v. Citadel Broad. Co., 2006-NMCA-102, ¶ 34, 142 P.3d at 43.

## LAW REGARDING NOMINAL PARTIES

"Early in its history, [the Supreme Court] established that the 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy." Navarro Sav. Ass'n v. Lee, 446 U.S. at 460-61 (citing Coal Co. v. Blatchford, 78 U.S. (11 Wall.) 172, 177 (1871); Marshall v. Baltimore & Ohio R.R., 57 U.S. (16 How.) 314, 328-29 (1854), superseded by statute, 18 U.S.C. § 1332; McNutt v. Bland, 43 U.S. (2 How.) 9, 15 (1844)). "[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." Navarro Sav. Ass'n v. Lee, 446 U.S. at 461 (citing McNutt v. Bland, 43 U.S. (2 How.) at 15; 6 Charles Wright & Arthur Miller, Federal Practice and Procedure § 1556, at 710-11 (1971)). See also Hann v. City of Clinton, ex rel. Schuetter, 131 F.2d 978, 981 (10th Cir. 1942)("In determining the question whether diversity of citizenship requisite to jurisdiction exists, a court looks to the citizenship of the real parties in interest; and where there is complete diversity between them, the presence of a nominal party with no real interest in the controversy will be disregarded."). Although "[t]here is no mechanical or bright line rule for determining when a party should be viewed as merely a nominal or formal party for the purpose of diversity jurisdiction," City of Carlsbad v. I&W, Inc., 2012 WL 12931286, at *6, the Tenth

Circuit recognizes as nominal parties those parties with no real interest in a suit or against whom no relief is sought, see Brazell v. Waite, 525 F. App'x at 883 (describing a defendant as a nominal party when the plaintiff sought "no relief" against the defendant); Nat'l Union Fire Ins. of Pittsburgh v. Kozeny, 19 F. App'x 815, 822 (10th Cir. 2001)(unpublished)(describing that National Union was not a nominal party, because it "was quite clearly a 'real party in interest'"); Hann v. City of Clinton ex rel. Schuetter, 131 F.2d 978, 981 (10th Cir. 1942)(deeming a city a nominal party when the city had only an "indirect and contingent pecuniary interest" in the suit's outcome); City of Carlsbad v. I&W, Inc., 2012 WL 12931286, at *6 ("According to the Tenth Circuit, when no relief is sought against a particular named defendant, that defendant is merely nominal."). See also Moya v. 3316 22nd Ave. Se., 2018 WL 2447801, at *1 n.2, *3 (determining real property, which a pro se plaintiff named in a law suit, not to be a nominal party, because the plaintiff sought no relief against the property).[4]

---

[4]Hartford Fire Insurance v. Harleysville Mutual Insurance, which the Insurance Defendants cited at the hearing, see Tr. at 31:4-13 (Biehler), bears little weight on the Court's interpretation of the law. Hartford Fire Insurance v. Harleysville Mutual Insurance is a United States Court of Appeals for the Fourth Circuit decision, which the Honorable J. Harvie Wilkinson, United States Circuit Judge for the Fourth Circuit, wrote and the Honorable Allyson K. Duncan, United States Circuit Judge for the Fourth Circuit, and the Honorable G. Steven Agee, United States Circuit Judge for the Fourth Circuit, joined. The language that the Insurance Defendants quoted -- "Nominal means simply a party having no immediately apparent stake in the litigation either prior or subsequent to the act of removal. In other words, the key inquiry is whether the suit can be resolved without affecting the non-consenting nominal defendant in any reasonably foreseeable way" -- is dicta that deviates from the Tenth Circuit's depictions of nominal parties. Hartford Fire Ins. v. Harleysville Mut. Ins., 736 F.3d at 260. Furthermore, the nominal party in Hartford Fire Insurance v. Harleysville Mutual Insurance fits the Tenth Circuit's holdings regarding nominal parties. See Hartford Fire Ins. v. Harleysville Mut. Ins., 736 F.3d at 261. The plaintiff sought "no monetary judgment" or "non-declaratory injunctive relief" against the nominal defendant, and the parties had settled "[a]ll of the claims against" that defendant. Hartford Fire Ins. v. Harleysville Mut. Ins., 736 F.3d at 261.

## ANALYSIS

The Court remands the case to the County of Santa Fe, First Judicial DistrictState of New Mexico and denies Hunt's request for fees and costs. The Insurance Defendants concede that Hunt and the Waters Defendants are New Mexico citizens. <u>See</u> Motion to Remand Reply at 1; Tr. at 32:1-2 (Biehler). The Court will not ignore the Waters Defendants' citizenship because they entered the Arbitration Agreement with Hunt, because the Court will not decide the Motion to Compel when it lacks subject-matter jurisdiction over the underlying controversy. The Court, accordingly, concludes that no complete diversity exists and that it lacks diversity jurisdiction. If the Court deemed the Waters Defendants nominal parties, it would not apply the forum-defendant rule -- 28 U.S.C. § 1441(b)(2), because the Waters Defendants would not be "parties in interest." 28 U.S.C. § 1441(b)(2).

The Court has granted the Motion to Stay in part and denied it in part. The parties agreed to the Motion to Stay and, in this Memorandum Opinion and Order, the Court follows Hunt's request and addresses first the Motion to Remand. <u>See</u> Tr. at 38:20-39:8 (Court, McGinn, Biehler, Freedman). At the hearing, the Court, to obtain context on the Motion to Remand, began arguments with the MTD, so the Insurance Defendants' request in the Motion to Stay Response regarding the order of arguments at the hearing was also granted. <u>See</u> Tr. at 3:5-15 (Court, Biehler). The Court lacks jurisdiction to decide the remaining issues.

## I.    THE COURT WILL REMAND THE CASE, BECAUSE IT LACKS SUBJECT MATTER JURISDICTION.

The Insurance Defendants' nominal-party theory hides their request's gist. The Insurance Defendants frame their argument through the nominal-party doctrine, so they avoid the need to address whether the Court has jurisdiction to decide the Motion to Compel. The Insurance

Defendants' bottom-line, however, is that the Court should decide the Motion to Compel before it determines whether it has subject-matter jurisdiction.  See Tr. at 32:10-12 (Court); id. at 32:13-14 (Biehler).  The Court cannot and will not decide the issues in that order.

The Insurance Defendants' arguments that the Court can decide the Motion to Compel concurrently with its subject matter jurisdiction do not persuade the Court.  See Tr. at 33:11-19 (Biehler); id. at 33:25-34:6 (Biehler).  The Court must have subject-matter jurisdiction before it may decide the Motion to Compel.  See Vaden v. Discover Bank, 556 U.S. 49, 66 (2009).  The Supreme Court "read[s] § 4 to convey that a party seeking to compel arbitration may gain a federal court's assistance only if, 'save for' the agreement, the entire, actual 'controversy between the parties,' as they have framed it, could be litigated in federal court."  Vaden v. Discover Bank, 556 U.S. at 66 (quoting 9 U.S.C. § 4).  The Court, therefore, has authority to decide the Motion to Compel only if it has jurisdiction over the underlying controversy.  See Hill v. Ricoh Ams. Corp., 603 F.3d 766, 771 (10th Cir. 2010).

The Court does not have-subject matter jurisdiction here.  "[Section] 4 of the FAA instructs district courts asked to compel arbitration to inquire whether the court would have jurisdiction, 'save for [the arbitration] agreement,' over 'a suit arising out of the controversy between the parties.'"  Vaden v. Discover Bank, 556 U.S. at 70 (quoting 9 U.S.C. § 4).  Section 1332(a)(1) requires complete diversity between parties.  See 28 U.S.C. § 1332(a)(1).  The Insurance Defendants concede that that Hunt and the Waters Defendants all are New Mexico citizens.  See Motion to Remand Reply at 1; Tr. at 32:1-2 (Biehler).  Complete diversity of citizenship, therefore, does not exist here.

Although the Insurance Defendants try to overcome this deficit by citing the nominal-party doctrine, the Court will not here apply the Insurance Defendants' theory. Hunt's main malpractice claim lies against the Waters Defendants. He seeks against them the same relief as he seeks against the Insurance Defendants. See Becker v. Angle, 165 F.2d at 142 ("The complainants are seeking the same relief against them as against the answering defendants. It follows that diversity of citizenship between the complainants and these unanswering and unknown parties is equally essential to the jurisdiction of the court as diversity between complainants and the answering defendants."). The Waters Defendants have an interest in avoiding liability, and Hunt seeks relief against them. See generally Complaint. Cf. Brazell v. Waite, 525 F. App'x at 883; Nat'l Union Fire Ins. of Pittsburgh v. Kozeny, 19 F. App'x at 822; Hann v. City of Clinton ex rel. Schuetter, 131 F.2d at 981; City of Carlsbad v. I&W, Inc., 2012 WL 12931286, at *6. The Arbitration Agreement does not affect the Waters Defendants' interests. Arbitration agreements reflect choices about venue, which do not implicate the relief sought or interests in liability. See BOSC, Inc. v. Bd. of Cty. Comm'rs of Cty. of Bernalillo, 853 F.3d 1165, 1177-78 (10th Cir. 2017)("The object of § 4 is 'to decide quickly -- summarily -- the proper venue for the case, whether it be the courtroom or the conference room, so the parties can get on with the merits of their dispute.'" (quoting Howard v. Ferrellgas Partners, L.P., 748 F.3d 975, 977 (10th Cir. 2014))); Image Software, Inc. v. Reynolds & Reynolds Co., 459 F.3d 1044, 1052-55 (10th Cir. 2006)("Finally, § 4 serves the purposes venue statutes traditionally serve; that is, it 'refers to locality, the place where a lawsuit should be heard.'" (quoting 15 Charles Wright, Federal Practice & Procedure, § 3801)). Moreover, the Insurance Defendants betray their own position when they concede that a court may not enforce the Arbitration Agreement. See Tr. at 32:1-2 (Biehler). If a court does

not enforce the Arbitration Agreement, the Waters Defendants will be the primary defendants with

an interest in avoiding liability and against whom Hunt seeks relief.  The Court cannot, therefore,

say that the Waters Defendants have no real interest in the lawsuit or that Hunt seeks no relief from

the Waters Defendants.[5]

---

[5]The Court favors looking past the Arbitration Agreement altogether to determine whether the Waters Defendants -- or any party -- is a nominal party when the Court has not yet compelled arbitration.  The FAA connects jurisdiction over arbitration-agreement cases with controversy underlying the lawsuit.  See 9 U.S.C. § 4.  Section 4 of the FAA instructs courts to ignore arbitration agreements when determining whether they have jurisdiction to enforce the contracts. See 9 U.S.C. § 4.  Section 4 makes clear that a court's jurisdiction depends on the actual controversy between the parties.  See 9 U.S.C. § 4.  If a court were to examine the arbitration agreement in the nominal-party analysis, the court would arbitrarily pull the agreement into the jurisdictional analysis.  Additionally, even when a party has not yet filed a motion to compel arbitration or has waived its right to arbitrate, a court should not need to employ a different, non-look-through standard.

An arbitration agreement should not be sufficient to transform a party into a nominal party. If an arbitration agreement made parties to the agreement nominal parties, an arbitration agreement would divest any court sitting in diversity jurisdiction of its jurisdiction.  Nothing suggests that the FAA envisions that courts may enforce arbitration agreements only when a court sits in federal-question jurisdiction.  Cf. 9 U.S.C. § 4 (stating that courts "would have jurisdiction . . . in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties"). Removing all diversity cases with arbitration agreements from court's jurisdiction would impair the "strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration."  Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d at 1488-89. Furthermore, because a party may waive a right to arbitration, but courts must always have subject-matter jurisdiction, that an arbitration agreement could make a party nominal would lead to the nonsensical result that a court must hypothesize on and potentially lose jurisdiction because of a right that the parties might waive.

Moreover, a nominal-party argument based on an arbitration agreement will almost always fail.  Arbitration agreements reflect choices about venue, and such choices do not implicate parties' interests or requests for relief.  See BOSC, Inc. v. Bd. of Cty. Comm'rs of Cty. of Bernalillo, 853 F.3d at 1177-78; Image Software, Inc. v. Reynolds & Reynolds Co., 459 F.3d at 1052-55.  Even if the nominal-party analysis should focus on what interests a party will litigate in federal court as the Insurance Defendants suggest, see Tr. at 30:10-16 (Biehler), arguments that parties to an arbitration agreement are nominal parties will flounder.  Before a court has decided a motion to compel arbitration, a court will almost always conjecture that it or another court may enforce the arbitration agreement.  The Insurance Defendants revealed this difficulty when they conceded that the court might not enforce the arbitration agreement.  See Tr. at 32:1-2 (Biehler).  Hence, such an

The substance of the dispute shows that New Mexico courts should decide this issue. The issues surrounding the Motion to Compel are all, or about all, state law issues. The Court understands that the Insurance Defendants would prefer that the federal court decide these issues, because the state courts have exhibited recently some receptivity to artful arguments, but, in the end, the state court is bound by applicable federal law, and the Court, if it were the proper forum, would be bound to applicable state law. Here, there is no need for the Court to decide state law issues when it does not have federal jurisdiction.

The Insurance Defendants disclaim any reliance on fraudulent joinder. It is worth looking at that doctrine, because it shows the weakness of their position. A review of the dispute surrounding the Motion to Remand shows that the Insurance Defendants can sustain a cause of action against the Waters Defendants. This case does not meet fraudulent joinder's standard that "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined. Zufelt v. Isuzu Motors Am., LCC, 727 F. Supp. 2d at 1124-25 (citing Montano v. Allstate Indem. Co., 211 F.3d 1278, 2000 WL 525592, at *4-5). Thus, the Waters Defendants are not fraudulently joined.

## II.  IF THE COURT HAD SUBJECT MATTER JURISDICTION, IT WOULD NOT APPLY § 1441(b)(2) -- THE FORUM DEFENDANT RULE.

Hunt mentioned briefly at the hearing that the Insurance Defendants violated 28 U.S.C. § 1441(b)(2) -- the forum-defendant rule. See Tr. at 26:24-27:2 (Montoya). If the Court

---

agreement "does not yield the conclusion" that a defendant has no interest in a suit or that a plaintiff seeks no real relief from a defendant. Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d 1208, 1219 (D.N.M. 2011)(Browning, J.)(quoting Cobalt Mining, LLC. v. Bank of Am., N.A., CIV.A. 3:07-CV-598S, 2008 WL 695887 at *3 (W.D. Ky. March 12, 2008)(Simpson, III, J.).

had subject matter jurisdiction, it would not apply this rule to block removal. Section 1441(b)(2) adds a condition for removal: "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441. The Tenth Circuit has indicated that it is not inclined to apply § 1441(b)(2) to impede removal when the defendant who resides in the forum is a nominal party. Brazell v. Waite, 525 F. App'x at 884 ("[W]e have serious doubt that Waite could be considered a 'part[y] *in interest properly joined*' as a defendant . . . ." (italics in Brazell v. Waite)). The Court follows this language and, if the Court had deemed the Waters Defendants nominal parties, it would not apply the forum-defendant rule, because the Waters Defendants would not be "parties in interest properly joined." 28 U.S.C. § 1441.

### III. THE COURT DENIES HUNT'S REQUEST FOR COSTS AND FEES.

The Court will not grant Hunt's request for the fees and costs for removal. See Motion to Remand Reply at 8. Although the Insurance Defendants do not have a strong argument for federal jurisdiction, their contentions are not "objectively unreasonable." Martin v. Franklin Capital Corp., 546 U.S. at 140. The Court does not, therefore, deem fees and costs warranted.

Section 1447(c) empowers courts to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The decision to award fees and costs lies in the court's discretion. See Martin v. Franklin Capital Corp., 546 U.S. at 139. The Supreme Court has clarified that, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists,

fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. at 141. "It is not necessary that the plaintiff show that the defendants acted in bad faith to win attorney's fees." Archuleta v. Taos Living Ctr., LLC, 791 F. Supp. 2d 1066, 1081-82 (D.N.M. 2011)(Browning, J.)(citing Topeka Hous. Auth. v. Johnson, 404 F.3d 1245, 1248 (10th Cir. 2005)).

Because the Court is granting the Motion to Remand, the Court has the power to require the Insurance Defendants to pay Hunt's fees and costs for litigating this issue. The Court will not require the payment of fees and costs. The Insurance Defendants' nominal-party arguments were not sufficiently unreasonable to warrant the imposition of fees and costs. Where a defendant has made good-faith arguments and cited authority to support their removal, the Court has not ordered fees and costs. See, e.g., Archuleta v. Taos Living Ctr., LLC, 791 F. Supp. 2d at 1082 (denying a request for fees and costs where the defendant "made good-faith arguments, with supporting authority, that removal was appropriate"); Allen v. Allstate Ins., No. CIV 08-0733 JB/RHS, 2010 WL 519862, at *6 (D.N.M. Jan. 26, 2010)(Browning, J.)("The Court finds that Allstate has made good-faith arguments and has found some authority to support its position that a second removal was appropriate."). Hunt is correct that the Insurance Defendants cite no authority that is on point to support their position. See Motion to Remand Reply at 8. No court, however, has yet addressed their specific ideas, and the Insurance Defendants cited caselaw to support their interpretation of the nominal-party doctrine. See Motion to Remand Response at 2; Tr. at 31:4-13 (Biehler). The Insurance Defendants' instinct is also not objectively unreasonable; a party to an arbitration agreement intuitively lacks quite the same interest as a party that is not subject to an arbitration agreement. Cf. Lohman Properties, LLC v. City of Las Cruces, No. CIV 08-0875 JB/WPL, 2008 WL 5999791, at *3 (D.N.M. Dec. 8, 2008)(Browning, J.)(denying a request for fees and costs

where the reason for remanding the case was "not intuitively obvious"). The Court also cannot say that the Insurance Defendants acted unreasonably by violating the forum-defendant rule, because the Court would not have applied the forum-defendant rule had it concluded that it had subject-matter jurisdiction.

The Court, therefore, will remand this suit to the First Judicial District, County of Santa Fe, State of New Mexico. The parties concede that Hunt and the Waters Defendants are New Mexico citizens, and Hunt brought the lawsuit in New Mexico. As complete diversity does not exist, and the Insurance Defendants could not properly remove the suit, the Court grants the Motion to Remand. The Motion to Stay is granted in part and denied in part, and the Court lacks jurisdiction to decide the remaining issues.

**IT IS ORDERED** that: (i) Plaintiff's Motion to Remand for Lack of Subject Matter Jurisdiction and for Fees Incurred as a Result of Improper Removal, filed October 1, 2018 (Doc. 11), is granted; (ii) Plaintiff's Motion to Stay Federal Proceedings Pending Determination of Motion to Remand (Doc. 12), is granted in part and denied in part; (iii) the case is remanded to the County of Santa Fe, First Judicial District, State of New Mexico.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Philomena M. Hausler
Robles, Rael & Anaya, P.C.
Albuquerque, New Mexico

--and--

Michael Sievers
A. Elicia Montoya
Randi McGinn
McGinn, Montoya, Love & Curry, PA
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Donna L. Chapman
Jessica Singer
Mitchell J. Freedman
Chapman and Priest, P.C.
Albuquerque, New Mexico

    *Attorneys for the Defendants Jack V. Waters and Jack V. Waters, D.C., P.C.*

Gregory L. Biehler
Lewis Brisbois Bisgaard & Smith LLP
Albuquerque, New Mexico

    *Attorneys for the Defendants The National Chiropractic Council and Allied Professionals*
      *Insurance Company*